IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CALVIN EARL HILL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:18-cv-00495-BP |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of the | § | |
| Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION**

Plaintiff Calvin Earl Hill ("Hill") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for disability insurance benefits under Title II of the Social Security Act ("SSA"). (ECF No. 1). Pursuant to the consent of the parties and the order of reassignment dated August 24, 2018 (ECF No. 15), the case has been transferred to the undersigned for the conduct of all further proceedings and the entry of judgment. After considering the pleadings, briefs, and the administrative record, the Court **AFFIRMS** the Commissioner's decision.

### I. STATEMENT OF THE CASE

Hill filed his application for disability benefits on July 24, 2014, alleging a disability onset date of September 9, 2013. (Transcript ("Tr.") 207–08). The Commissioner initially denied his application for benefits on October 24, 2014, (Tr. 57–67), and denied them again upon reconsideration on March 31, 2015, (Tr. 68–93). Hill requested a hearing before an Administrative Law Judge ("ALJ"), (Tr. 109–10), and a hearing was held before an ALJ in Fort Worth, Texas on

December 14, 2016, (Tr. 34–56). An attorney represented Hill at the hearing. (*Id.*). Vocational Expert ("VE") Patricia Knight testified at the hearing. (*Id.*). The ALJ issued a partially favorable decision on February 24, 2017. (Tr. 26). The ALJ found Hill not disabled under the SSA prior to his fifty-fifth birthday, which was on October 16, 2016. (Tr. 25). But, because Hill's age category changed on his fifty-fifth birthday, the ALJ found, when considering Hill's age, education, and work experience, that he became disabled on that date. (Tr. 25).

In the decision, the ALJ employed the statutory five-step analysis. At step one, the ALJ found that Hill had not engaged in substantial gainful activity since the alleged disability onset date. (Tr. 14, Finding 2). At step two, the ALJ found that Hill had the severe impairments of right shoulder rotator cuff tear, left shoulder rotator cuff tear, a bulging disc in his cervical spine, with canal stenosis and neural foraminal narrowing, obesity, depression, and anxiety. (Tr. 14, Finding 3). At step three, the ALJ found that Hill's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404(P)(1). (Tr. 16, Finding 4). The ALJ, therefore, determined that Hill had the residual functional capacity ("RFC") to perform "the exertional demands of light work . . . with the following non-exertional limitations: he can climb ramps and stairs frequently, but never ropes, ladders or scaffolds; he can balance and stoop frequently, and can occasionally kneel, crouch and crawl; he can occasionally reach overhead on the right; [and] mentally his is limited to performing simple, routine tasks" (Tr. 17, Finding 5). At step four, with this RFC, the ALJ found that Hill was unable to perform his past relevant work as a cement truck driver. (Tr. 24, Finding 6). At step five, after considering the VE's testimony and Hill's age, education, work experience, and RFC, the ALJ determined that prior to October 16, 2016 there were a significant number of jobs in the national economy that he could have performed. (Tr. 24–25, Finding 10). But that after October 16, 2016, when Hill's age category

changed, the ALJ determined that there were no significant number of jobs in the national economy that he could perform. (Tr. 25, Finding 11). Thus, the ALJ ruled Hill had been disabled beginning on October 16, 2016. (Tr. 26).

The Appeals Council denied Hill's request for review on April 17, 2018. (Tr. 1–5). Therefore, the ALJ's decision became the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005) ("[T]he Commissioner's final decision includes the Appeals Council's denial of a request for review.").

## II.  FACTUAL BACKGROUND

According to Hill's pleadings, testimony at the administrative hearing, and the administrative record, he was 55 years old at the time of the administrative hearing. (Tr. 38). He did not complete high school. (Tr. 39). His employment history included work as a laborer and cement truck driver. (Tr. 40–43). Hill's severe physical impairments stem from a job-related accidental that occurred in September 2013 where he sustained multiple rib fractures, left shoulder sprain, pneumothorax, and C7 cervical transverse process fracture. (Tr. 448, 452).

## III.  STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.* of the SSA controls the disability insurance program as well as numerous regulatory provisions concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). For

3

step one, the claimant must not be presently working at any substantial gainful activity to obtain disability benefits. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1572; *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002). For step two, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). For step three, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing") found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Before proceeding to step four, the Commissioner must assess the claimant's RFC—"the most the claimant can still do despite his physical and mental limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). For step four, if the claimant's medical status alone does not constitute a disability, the impairment must prevent the claimant from returning to his past relevant work. 20 C.F.R. § 404.1520(e). For step five, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(f); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). "The claimant bears the burden of showing [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). "If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (quoting *Crowley*, 197 F.3d at 198).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the

decision. *Audler*, 501 F.3d at 447; *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harris*, 209 F.3d at 417. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).

## IV. ANALYSIS

Hill raises a single issue on appeal. He claims that the ALJ erred in finding that his impairment did not meet or equal section 1.04A of the Listing. (ECF No. 17 at 3). At step three, disability exists if a claimant shows that his impairment satisfies at least one of the impairments in the Listing. 20 C.F.R. § 404.1520(a)(4)(iii). Whether a claimant's impairment meets the criteria of a listed impairment is usually more a question of medical fact than opinion because most of the criteria are objective and simply a matter of documentation, but it is still an issue ultimately reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996). And the ALJ is responsible for ultimately deciding the legal question of whether a listing is met or equaled. SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996); *see generally* SSR 96-5p, 1996 WL 374183, at *3; 20 C.F.R. §§ 404.1526(e), 416.926(e). When determining whether an impairment medically equals a listing, the Commissioner considers all relevant evidence in the record about such impairment, including findings from medical sources. 20 C.F.R. § 404.1526(c). Medical equivalence is found

when an impairment "is at least equal in severity and duration to the criteria of any listed impairment. *Id.* 404.1526(a).

The claimant has the burden of proving that an impairment or combination of impairments meets or equals a listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). "For a claimant to show that his impairment matches [or meets] a listing, it must meet *all* of the specified medical criteria." *Zebley*, 493 U.S. at 530 (emphasis in original). An impairment, no matter how severe, does not qualify if that impairment exhibits only some of the specified criteria. *Id.* A court will find that substantial evidence supports the ALJ's finding at step three if the plaintiff fails to demonstrate the specified medical criteria. *Selders*, 914 F.2d at 619–20.

When the ALJ's decision at step three is at issue, a reviewing court must (1) determine whether the ALJ supported the step-three determination with a discussion of the relevant evidence, and, if the ALJ failed to do so, (2) determine whether the error was harmless. *Audler*, 501 F.3d at 448–49. "Although it is not always necessary that an ALJ provide an exhaustive discussion of the evidence, bare conclusions, without any explanation for the results reached, may make meaningful judicial review of the Commissioner's final decision impossible." *Inge ex rel. D.J.I. v. Astrue*, No. 7:09-CV-95-O, 2010 WL 2473835, at *9 (N. D. Tex. May 13, 2010) (citing *Audler*, 501 F.3d at 448). "However, before the absence of reasons for adverse findings requires rejection of the unfavorable decision, a court must determine whether the error was harmless." *Id.*; *see Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" so long as "the substantial rights of a party have [not] been affected."). To be entitled to relief, the claimant must establish that the ALJ erred and that the ALJ's error calls into

question the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1998).

Applicable here is the impairment under section 1.04A of the Listing ("Listing 1.04A"). Listing 1.04A deals with disorders of the spine, such as herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture, "resulting in compromise of a nerve root or spinal cord" with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.04(A). For musculoskeletal impairments, like disorders of the spine, a claimant must demonstrate either an "inability to ambulate effectively on a sustained basis . . . , or the inability to perform fine and gross movements effectively on a sustained basis." *Audler*, 501 F.3d at 449 (citing 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.00(B)(2)). Moreover, in addition to demonstrating all of the Listing 1.04A criteria, Hill must also demonstrate that he met the listing criteria for a period that lasted or is expected to last at least twelve months. *Woods v. Colvin*, No. 3:14-CV-1990-B-BH, 2015 WL 5311142, at *12 (N.D. Tex. Aug. 26, 2015), *adopted by*, No. 3:14-CV-1990-B-BH, 2015 WL 5319926 (N.D. Tex. Sept. 10, 2015); *see also* 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.00(B)(2).

Hill contends that the ALJ's analysis of whether his cervical spinal impairment meets or equals Listing 1.04A is insufficient because it amounts to a "bare conclusion" that has been denounced under *Audler*. (ECF No. 17 at 4). Further, Hill argues that there is record evidence indicating that Hill's cervical spine impairment meets the criteria for Listing 1.04A. (*Id.*). Hill, in his brief, sets forth the medical evidence that he believes shows that he meets all of the Listing

7

1.04A criteria. (ECF No. 17 at 5–6). The Court, after reviewing the ALJ's decision and the medical evidence referenced by Hill, finds that the ALJ's decision at step three is supported by substantial evidence in the record.

In this case, the ALJ specifically found at step three that Hill's impairments did not meet or equal the required criteria for any of the sections in the Listing. (Tr. 21–22). Specifically related to Listing 1.04, the ALJ stated:

> The claimant's cervical spine impairments do not meet the requirements of listing 1.04 for disorders of the spine because there is no indication of motor loss accompanied by sensory or reflex loss. The claimant does have weakness (See e.g., Exh. 28F-10) though his recent treating physician, Constantine Fotopoulos, M.D., rated him with 5/5 strength in all his extremities (See e.g., Exh. 33F-18, April 11, 2016).; per contra, see Exh. 33F-14), but he has no observed sensory or reflex losses (See e.g., Exh. 27F-2, as to no observable sensory changes, though his reflexes are noted as hypoactive).

(Tr. 16).

Here, the ALJ supported his step-three determination with a discussion of relevant evidence. Although the ALJ did not specifically refer to Listing 1.04A, he did invoke it by referring to the Listing 1.04A criteria that Hill did not meet. (*See* Tr. 16). In addition, the ALJ discussed that while there was some evidence of weakness, Hill's treating physician found that Hill had 5/5 strength in all his extremities. (*Id.*). Accordingly, the ALJ properly discussed and supported his conclusion that Hill did not meet all of the Listing 1.04A criteria.

Although the ALJ stated that Hill had no sensory or reflex losses, the evidence he cited to indicates his reflexes were hypoactive. (*Id.*). While this finding seems contradictory, any error is harmless because Listing 1.04A requires evidence of motor loss *accompanied* by sensory or reflex loss. Hill has the burden at step three to show that his impairment meets or equals "*all* of the specified medical criteria" for Listing 1.04A. *Zebley*, 493 U.S. at 530. To meet this burden, Hill

cites to several medical records that purportedly reflect motor loss accompanied by sensory or reflex loss. They are:

1.   Treatment notes from Stormont-Vail Health Care. (Tr. 389).

Hill cites to treatment notes from his hospital stay at Stormont-Vail Health Care after his accident. Presumably, Hill is referring to the extremities finding of "pain with ROM." Interestingly, the neurological finding states that there were no sensory or motor deficits.

2.   The records of Anthony Huber. (Tr. 509)

The records of Mr. Huber have no bearing on this case because they do not mention any observations of Hill's cervical spine impairment.

3.   Psychiatric progress notes of William S. Logan, MD. (Tr. 523–32).

Hill cites to page seven of Dr. Logan's progress notes from March 6, 2014 (the notes indicate they are from March 2013, but this was apparently a typographical error), which discusses Hill's subjective fear of being injured if he were to return to construction work. (Tr. 528). Hill described his mobility as "better" and his strength as "decreased." And that he fears he would not be able to turn a steering wheel fast enough in an emergency. (*Id.*). Although relevant to Hill's mental impairments, his subjective beliefs regarding his mobility and strength limitations are not physical findings based upon observations during a physical examination. 20 C.F.R. § Part 404, Subpt. P, App. 1, § l.00(D) ("These physical findings must be determined on the basis of objective observation during the examination and not simply a report of the individual's allegation; e.g., 'He says his leg is weak, numb.'").

4.   Notes of Charles C. Satterlee, M.D. (Tr. 538)

Hill cites to the notes of Dr. Satterlee who examined Hill for workers' compensation purposes on October 17, 2013, just over a month after the accident. The page Hill cites to discusses

9

his medical history, but it provides no findings about Hill's alleged motor loss or accompanying sensory or reflex losses.

    5.      Physical therapy notes of Frank Carrio, DPT (Tr. 719, 721, 732).

        a.      October 7, 2014

Hill cites to an evaluation performed by Mr. Carrio, a physical therapist, twenty days after surgery on Hill's right rotator cuff. It discusses Hill's shoulder range of motion, moderate muscle guarding, and physical therapy progress. Mr. Carrio also noted that Hill is unable to meet the job demands of a truck driver due to his limited range of motion, strength, and inability to ambulate in and out of the truck. He concluded that Hill would benefit from physical therapy to improve both strength and mobility and provided recommendations for continued physical therapy. The notes, however, do not discuss or mention any objective findings of Hill's muscle weakness or accompanying sensory or reflex loss.

        b.      October 24, 2014

Hill cites to another evaluation performed by Mr. Carrio, which discusses Hill's shoulder range of motion, subjective pain, and home exercise program progress. Mr. Carrio does state that there is some moderate "muscle guarding," but that Hill tends to relax after being given verbal cues. Notably, there are two sections of the assessment describing Hill's cervical spine strength, but both sections indicate that it was not tested.

        c.      December 3, 2014

Hill cites to another evaluation performed by Mr. Carrio three months after Hill's rotator cuff surgery. It discusses Hill's range of motion, subjective pain, and home exercise program progress. But like the October 24th evaluation, it also indicated that Hill's cervical spine strength had not been tested.

6. Examination notes of Mark A. Greenfield, MD. (Tr. 855–56).

Hill cites to the treatment notes of Dr. Greenfield who examined him on January 1, 2015 for cervical spine pain. Although the notes indicate Hill's grip strength was mildly decreased, it was not accompanied by any measurements of grip or pinch strength. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.00(E) ("A specific description of atrophy of hand muscles is acceptable without measurements of atrophy[,] but should include measurements of grip and pinch strength.").

7. Functional assessment conducted at ARC Physical Therapy by David Appleman, PTA, ATC and Mark Kohls, DPT, MDT, ATC/L. (Tr. 862–73).

Hill cites to a single page from a functional assessment conducted by Mr. Appleman and Mr. Khols, both physical therapists, on April 6, 2015. The purpose of the functional assessment was to determine if Hill could perform the demands of his prior occupation as a cement truck driver, which was classified as a heavy demand vocation. (Tr. 862). Although the report indicated decreased strength in Hill's shoulders, the ALJ ultimately gave the functional report little weight, as explained in his RFC assessment, because Hill's performance showed mixed results for consistency and the strength tests were measured over short versus sustained durations. (Tr. 19, 870 ("Lifting activities were reportedly limited by neck and Rt. shoulder pain [, but] [g]iven that the reproducibility between repeated measures was found to be equivocal, the subjective reports may or may not be credible.")). Ultimately, the functional assessment indicated that Hill could perform the material handling demands for a medium demand vocation. (Tr. 862).

Although there is some evidence of decreased strength and weakness in the evidence referenced by Hill, it falls short of demonstrating that he could satisfy or was expected to satisfy the Listing 1.04A criteria for at least twelve months. This is especially true in the face of controverting evidence cited by the ALJ from Dr. Fotopoulos, Hill's treating physician. In Dr.

11

Fotopoulos' March and April 2016 assessments of Hill's neck and upper extremity impairments, he stated, among other things, that Hill had normal gait and station, radiation of pain to his "bilateral, right greater than left shoulder and arm," strength as "5/5 in the Bilateral Upper and Lower Extremities," and deep tendon reflexes bilaterally of 2/4 for C5, C6, L4, and S1. (Tr. 1109, 1113). Dr. Fotopoulos' assessment is substantial evidence that Hill's cervical spine impairment has not affected his motor functions such that it meets or equals Listing 1.04A. *See, e.g.*, *Zimmerman v. Astrue*, 288 F. App'x 931, 937 (5th Cir. 2008) (per curiam) ("Dr. Hanley found that Zimmerman's motor strength was "5/5 in all muscle groups," suggesting no motor loss."); *Jackson v. Colvin*, No. 5:12-CV-187-C, 2013 WL 4441989, at *4 (N.D. Tex. Aug. 20, 2013) ("[A] specialist reported 5/5 strength throughout and balance and gait within normal limits . . . Thus, the evidence does not demonstrate that [claimant's] impairments meet or equal the criteria of listing 1.04(A)."). *Pannell v. Astrue*, No. 3:11-CV-2385-D, 2012 WL 4341813, at *5 (N.D. Tex. Sept. 21, 2012) ("[Claimant] had 5/5 motor strength, no tenderness of the back, no limitation of motion of the spine, and no gait abnormality.").

Accordingly, there was substantial evidence in the record to support the ALJ's decision. Hill has not proven that his substantial rights have been affected. Thus, even if the ALJ erred, error on the party of the ALJ at step three was harmless.

## V. CONCLUSION

Because the ALJ's determination that Hill did not meet or equal Listing 1.04A applied the correct legal standard and was supported by substantial evidence, the Court **AFFIRMS** the Commissioner's decision.

Signed **February 15, 2019**.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE